UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
┌─────────────────────────────────────────────┐
│ U.S. SPECIALTY INSURANCE COMPANY,            │
│                                              │
│         Plaintiff,                           │
│                                              │
│    -v-                                       │
│                                              │
│ AMERICAN EMPIRE SURPLUS LINES                │
│ INSURANCE COMPANY,                           │
│                                              │
│         Defendant.                           │
└─────────────────────────────────────────────┘
```

25-cv-7415 (JSR)

OPINION & ORDER

JED S. RAKOFF, U.S.D.J.:

Before the Court is the motion of plaintiff U.S. Specialty Insurance Company ("USSIC") for partial summary judgment against defendant American Empire Surplus Lines Insurance Company ("American Empire"). See ECF No. 14. In its motion, USSIC seeks a declaratory judgment that American Empire has a duty to defend USSIC's insured, MDG Design & Construction LLC ("MDG"), in an underlying personal injury action and that USSIC may withdraw from MDG's defense in that action; USSIC also seeks reimbursement for the costs that it has incurred in defending MDG to date. See id.

Upon due consideration of the parties' written submissions and the arguments of counsel, the Court hereby grants USSIC's motion.

I.    Background

This case is an insurance coverage dispute arising out of a personal injury action that has been pending in the Supreme Court of the State of New York, Bronx County, for more than six years. See Natal v. Phoenix Realty Grp. LLC, Index No. 23360/2019E (N.Y. Sup. Ct.

1

Mar. 20, 2019) (the "Underlying Action"). On each of three occasions when MDG's counsel requested that American Empire defend and indemnify MDG in connection with the Underlying Action, American Empire denied those requests. See ECF No. 16 ("Pl.'s 56.1 Statement") ¶¶ 29-33. As a result, USSIC has been defending MDG in the Underlying Action and, in doing so, has incurred some $65,000 in costs to date. See id. ¶ 34. Because USSIC contends that American Empire's refusal to defend and indemnify MDG was wrongful, it brought this case, seeking declaratory relief and monetary damages.

In the Underlying Action, plaintiff Evelyn Sanchez Natal alleges that she was injured on May 9, 2016, when she tripped on debris in a parking garage at Keith Plaza, located at 2475 Southern Boulevard in the Bronx, and fell due to an upturned and improperly placed cement parking barrier. Id. ¶ 8. On March 20, 2019, Natal brought suit against Keith Plaza's owners, Phoenix Realty Group, LLC; Keith Owner, LLC; and Keith Plaza, Inc. (collectively, the "Owners"). Id. ¶ 9; ECF No. 15-1. In a separate lawsuit that was thereafter consolidated with the Underlying Action, Natal also sued Keith Plaza's management company, R.Y. Management Co. See ECF No. 15-2 ¶¶ 14-15.

Natal's complaint in the Underlying Action spawned several rounds of third-party litigation. On May 18, 2021, the Owners, as third-party plaintiffs, sued MDG, as a third-party defendant. Pl.'s 56.1 Statement ¶ 11; ECF No. 15-2. The Owners alleged that MDG, a contractor they hired to perform work at Keith Plaza, negligently caused Natal's injuries and thus was required to indemnify the Owners for any recovery

that Natal might obtain in the Underlying Action. <u>See</u> ECF No. 15-2
¶¶ 18-30. Then, on February 2, 2022, MDG, as second third-party
plaintiff, sued AMB Construction, Inc. ("AMB"), as second third-party
defendant. Pl.'s 56.1 Statement ¶ 12; ECF No. 15-3. MDG alleged, among
other things, that it had subcontracted to AMB a portion of the work
to be performed at Keith Plaza; that AMB's negligence caused Natal's
injuries; and that, pursuant to the subcontract between MDG and AMB,
AMB was obligated to indemnify MDG for any damages that MDG might be
required to pay. <u>See</u> Pl.'s 56.1 Statement ¶ 12; ECF No. 15-3. Finally,
on March 2, 2022, the Owners filed another third-party complaint
against AMB, alleging that AMB's negligence caused Natal's injuries
and that AMB was required to indemnify the Owners for any damages that
Natal might obtain in the Underlying Action. <u>See</u> Pl.'s 56.1 Statement
¶ 13; ECF No. 15-4.

Under the subcontract between MDG and AMB, AMB agreed to perform
work on the roof and interior of Keith Plaza's parking garage. Pl.'s
56.1 Statement ¶ 15. As relevant here, the subcontract obligated AMB
to (1) keep the work site "free at all times from all waste
materials . . . and other debris or rubbish accumulated in connection
with" its work, as well as clean and remove any "soiling, staining,
mortar, plaster, concrete[,] or dirt caused by" its work, <u>id.</u> ¶ 16;
(2) obtain general liability insurance that, among other things, named
MDG as an additional insured and provided that AMB's insurance would
apply on a "primary and non-contributory basis" to additional insureds,
<u>id.</u> ¶¶ 17-18; and (3) indemnify MDG for any liability "that may arise

from, relate to[,] or may be attributable to (or [is] claimed to arise from[,] relate to[,] or be attributable to)" AMB's wrongful acts, id. ¶ 19.[1]

Pursuant to the subcontract, and as of the date of Natal's alleged injuries, AMB held a general liability insurance policy issued by American Empire. Id. ¶ 20. The policy covered "bodily injury" or "property damage" occurring "in the performance of [AMB's] ongoing operations for" its "additional insured(s)." Id. ¶ 22. Rather than listing any additional insureds by name, the policy provided that additional insureds would be "[a]ll entities required by written contract to be included for coverage as additional insured's [sic] in respect to operations performed by" AMB. ECF No. 15-6 at 49; see Pl.'s 56.1 Statement ¶¶ 23-24 & n.1. There is no dispute that MDG was such an entity in reference to the Keith Plaza project. The policy also provided that, subject to certain requirements not at issue here, its coverage for bodily injury or property damage "is primary insurance" and that "the insurance maintained by the additional insured shall be non-contributing." ECF No. 15-6 at 56; see Pl.'s 56.1 Statement ¶ 25.[2]

---

[1] In all quotations, the Court omits citations, footnotes, emphases, internal quotation marks, brackets, and ellipses, unless otherwise indicated.

[2] For its part, as of the date of Natal's alleged injuries, MDG held a commercial liability insurance policy issued by USSIC. Pl.'s 56.1 Statement ¶ 26. That policy provided that it would operate as "excess" insurance over "[a]ny other primary insurance available to [MDG] covering liability . . . for which [MDG has] been added as an additional insured by attachment of endorsement." Id. ¶ 28.

Discovery in the Underlying Action has commenced. As relevant here, MDG's construction manager testified at his deposition that AMB began demolition and related work on the Keith Plaza garage beginning on April 8, 2016; that AMB workers used jackhammers on the roof of the garage to break up concrete; and that AMB was responsible for cleaning up debris resulting from its work, including such debris as fell into the interior of the garage. ECF No. 15-13 at 30-32, 66-67, 76; Pl.'s 56.1 Statement ¶ 35; ECF No. 20 ("Def.'s 56.1 Statement") ¶ 35. The construction manager further testified that AMB was performing concrete removal work on May 9, 2016, the day of Natal's alleged injuries. ECF No. 15-13 at 73-74; Pl.'s 56.1 Statement ¶ 35. But he and other witnesses testified that the work being performed on the date of Natal's alleged accident was not taking place above the location where Natal allegedly fell. Def's 56.1 Statement ¶¶ 35, 39; ECF No. 15-13 at 74; ECF No. 15-15 at 56-71; cf. ECF No. 18-1 at 21-24, 34-35; ECF No. 18-4 at 86-91. According to the testimony of AMB's owner, which is corroborated by contemporaneous documents, the phase of work that was performed over the site of Natal's alleged injury was completed on May 3, 2016. See ECF No. 18-4 at 86-91; Def.'s 56.1 Statement ¶¶ 38-41. As for Natal herself, she testified that she had seen, and complained to R.Y. Management Co. about, debris in the parking garage beginning no later than 2015. ECF No. 18-2 at 134-39; Def.'s 56.1 Statement ¶ 37. She testified that she "started making complaints, a lot of complaints, in about three months prior" to the accident. ECF No. 18-2 at 135.

## II.  Procedural History

USSIC brought this action on September 8, 2025. See ECF No. 1. In its Complaint, USSIC asserted four claims, seeking a declaration that MDG is an additional insured under the policy that American Empire issued to AMB (Count One); a declaration that American Empire is obligated to defend MDG in the Underlying Action on a primary and non-contributory basis and that, therefore, USSIC is entitled to withdraw from defending MDG (Count Two); a declaration that American Empire is also obligated to indemnify MDG in the Underlying Action on a primary and non-contributory basis (Count Three); and monetary damages for the costs and expenses that USSIC has incurred in defending MDG to date (Count Four). See id. at 9.

At the initial pretrial conference in this matter, the parties requested, and the Court agreed, to stay discovery and proceed immediately to partial summary judgment on Counts One, Two, and Four. USSIC filed the instant motion on October 13, 2025, see ECF No. 14; the motion was fully briefed on November 3, 2025, see ECF Nos. 15-22; and the Court held oral argument on November 7, 2025.

## III. Legal Standards

The familiar standard for summary judgment is that it shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Where the interpretation of a clear and unambiguous insurance policy is the 'sole question' presented on a motion for summary judgment, 'the issue is one of law that may be

decided by the Court upon a motion for summary judgment.'" <u>Standard</u> <u>Gen. L.P. v. Travelers Indem. Co. of Conn.</u>, 261 F. Supp. 3d 502, 506 (S.D.N.Y. 2017) (quoting <u>Vill. of Piermont v. Am. Alt. Ins. Corp.</u>, 151 F. Supp. 3d 438, 447 (S.D.N.Y. 2015)).

In New York, courts adjudicating insurance coverage disputes are to construe an insurance policy "in a way that affords a fair meaning to all of the language employed by the parties . . . and leaves no provision without force and effect." <u>Raymond Corp. v. Nat'l Union Fire</u> <u>Ins. Co. of Pittsburgh</u>, 5 N.Y.3d 157, 162 (2005). Where an insurance policy provides coverage for bodily injury, such coverage is available when there is a "reasonable possibility" that an insured "proximately caused" an alleged injury. <u>Indian Harbor Ins. Co. v. Alma Tower, LLC</u>, 165 A.D.3d 549, 549 (1st Dep't 2018). Mere but-for causation is insufficient. <u>Hanover Ins. Co. v. Phila. Indem. Ins. Co.</u>, 159 A.D.3d 587, 587-88 (1st Dep't 2018).

The duty of an insurer to defend its insured is "exceedingly broad" under New York law, and "far more expansive than the duty to indemnify its insured." <u>High Point Design, LLC v. LM Ins. Corp.</u>, 911 F.3d 89, 94 (2d Cir. 2018); <u>accord</u> <u>Emps. Ins. Co. of Wausau v.</u> <u>Harleysville Preferred Ins. Co.</u>, 726 F. App'x 56, 60 (2d Cir. 2018) (summary order). The duty to defend is triggered "whenever the allegations in a complaint against the insured fall within the scope of the risks undertaken by the insurer, <u>regardless of how false or</u> <u>groundless those allegations might be</u>." <u>High Point Design</u>, 911 F.3d

at 94 (quoting <u>Seaboard Sur. Co. v. Gillette Co.</u>, 64 N.Y.2d 304, 310 (1984)) (emphasis added). For that reason, an insurer may deny its insured a defense "only if it could be concluded as a matter of law that there is no possible factual or legal basis on which the insurer might eventually be held to be obligated to indemnify the insured." <u>High Point Design</u>, 911 F.3d at 95. These standards apply equally to named insureds and additional insureds. <u>E.g.</u>, <u>BP Air Conditioning Corp. v. One Beacon Ins. Grp.</u>, 8 N.Y.3d 708, 714-15 (2007).

The duty to defend may also be triggered when an insurer knows "underlying facts," including facts developed in discovery, that "create a reasonable possibility that the insured may be held liable for some act or omission covered by the policy." <u>High Point Design</u>, 911 F.3d at 96-97. But an insurer may not rely on evidence from an underlying action to evade the duty to defend, except where such evidence "establishes as a matter of law that there is no possible factual or legal basis on which it might eventually be obligated to indemnify its insured under any policy provision." <u>Travelers Indem. Co. of Conn. v. Hudson Excess Ins. Co.</u>, No. 24 Civ. 1523, 2025 WL 2772941, at *8 (S.D.N.Y. Sept. 26, 2025) (quoting <u>Allstate Ins. Co. v. Zuk</u>, 78 N.Y.2d 41, 45 (1991)).

Finally, where an insurer breaches the duty to defend, "the insured's damages are the expenses reasonably incurred by it in defending the action after the carrier's refusal to do so." <u>Arch Specialty Ins. Co. v. Farm Family Cas. Ins. Co.</u>, 238 F. Supp. 3d 604,

615 (S.D.N.Y. 2017). Such damages may be recouped directly by an insured or by another insurer that has been providing the insured a defense. See id. at 615-16.

IV.  Analysis

This case presents few disputes of fact, none of them material. Accordingly, the Court proceeds to consider whether USSIC has shown that it is entitled to judgment as a matter of law on Counts One, Two, and Four. Cf. Fed. R. Civ. P. 56(a). Because the Court concludes that American Empire is obligated to defend MDG in the Underlying Action, it also concludes that American Empire must reimburse USSIC for the costs it has thus far incurred in defending MDG.

Notably, the parties are in agreement on many of the key legal issues. American Empire does not contest that MDG falls within the definition of an additional insured under the policy held by AMB; nor does American Empire contest that AMB's policy provides primary coverage, while the policy that USSIC issued to MDG provides excess coverage. Nor does American Empire dispute that, if it owes MDG a defense, it also owes USSIC reimbursement for defense costs to date. Moreover, the parties agree that, if the allegations in the Underlying Action suggest a "reasonable possibility" that AMB's actions proximately caused Natal's injuries, American Empire would be obligated to defend MDG. See ECF No. 21 at 9-14; City of New York v. Harleysville Ins. Co., 682 F. Supp. 3d 335, 339 (S.D.N.Y. 2023). The parties disagree, however, as to whether any allegations in the

Underlying Action trigger American Empire's duty to defend.

While the parties focus on Natal's complaint against the Owners and MDG's third-party complaint against AMB, the Owners' third-party complaint against AMB plainly triggers American Empire's duty to defend MDG. That third-party complaint specifically alleges that, if Natal "sustained any damages in the manner alleged and at the time and place as set forth in [Natal's original complaint], such damages were caused in whole or in part by the negligence, and/or breach of contract of Third Third-Party Defendant AMB." ECF No. 15-4 ¶ 21. Read in the context of the Underlying Action as a whole, this allegation raises a "reasonable possibility" that AMB was the proximate cause of Natal's injuries. See ECF No. 17 at 8; ECF No. 22 at 5-6.[3]

The allegations in Natal's original complaint also indicate, though somewhat less directly than those in the Owners' third-party complaint, a "reasonable possibility" that AMB proximately caused

---

[3] So also do some of the allegations in the third-party complaint that MDG filed against AMB. See ECF No. 15-3. For instance, that third-party complaint alleges that MDG engaged AMB "to perform certain demolition, construction[,] and/or renovation work and services" and that "the alleged incident that forms the basis of Plaintiff's claims allegedly arose out of AMB's work." Id. ¶¶ 19, 21. At oral argument, American Empire's counsel urged the Court not to consider MDG's third-party complaint because, in counsel's view, holding that the duty to defend could be triggered by an additional insured's own lawsuit against a named insured would create a "slippery slope" by incentivizing litigation by one co-insured against another. The Court is not unsympathetic to American Empire's position, but the Court need not decide the issue because, as discussed herein, both Natal's original complaint and the Owners' third-party complaint against AMB trigger American Empire's duty to defend.

Natal's injuries. In that complaint, Natal alleges that she "was caused to sustain serious and severe personal injuries . . . due to the negligence of defendants, by their agents, servants[,] and/or employees"; and that such negligence consisted of, among other things, "negligently, carelessly[,] and recklessly allowing, causing[,] and/or permitting the subject refuse/debris and cement parking barrier to remain in the parking area." ECF No. 15-1 ¶¶ 35, 37. New York courts have routinely held that phrases akin to "agents, servants[,] and/or employees," when included in complaints filed by plaintiffs who are likely unable to identify every entity involved in a construction project where a plaintiff's injuries allegedly occurred, can give rise to a "reasonable possibility" that subcontractors and other so-called "downstream" entities are the proximate cause of the plaintiff's injuries. U.S. Specialty Ins. Co. v. Mass. Bay Ins. Co., No. 21 Civ. 10590, 2023 WL 6162409, at *5-8 (S.D.N.Y. Sept. 21, 2023) (collecting cases). Natal's allegations that the "agents, servants[,] and/or employees" of the Owners proximately caused her injuries are thus sufficient to trigger American Empire's duty to defend MDG, its additional insured. See ECF No. 17 at 8; ECF No. 22 at 4-5.[4]

---

[4] USSIC also cites Employers Insurance Company of Wausau v. Harleysville Insurance Company of New York, 759 F. Supp. 3d 344 (E.D.N.Y. 2024). See ECF No. 22 at 4-5. There, the underlying plaintiff sued the City of New York and its general contractor over an injury that she allegedly suffered at a crosswalk where repairs had been performed. The underlying complaint expressly alleged that the general contractor had hired an unnamed subcontractor in connection with the repair work. The court held that the complaint's allegations about the

Furthermore, even if the allegations in the Owners' and Natal's complaints were insufficient to trigger American Empire's duty to defend MDG, American Empire does not deny that it has been aware of evidence in the Underlying Action showing that there is a "reasonable possibility" that AMB was the proximate cause of Natal's injuries. See High Point Design, 911 F.3d at 96-97. Specifically, deposition testimony in the Underlying Action suggests that (1) AMB performed demolition work on the Keith Plaza garage beginning on April 8, 2016, and continuing through the date of Natal's alleged injury; (2) AMB was responsible for cleaning up debris resulting from its work; and (3) the portion of AMB's work that took place immediately above the site of Natal's alleged injury concluded only six days before the date of that injury. It is well-settled that both deposition testimony about the circumstances of an injury and evidence about a contractor's obligation to ensure the safety of a work site can give rise to a "reasonable possibility" of liability and thus trigger the duty to defend. See, e.g., Charter Oak Fire Ins. Co. v. Zurich Am. Ins. Co., 462 F. Supp. 3d 317, 326-27 (S.D.N.Y. 2020); Travelers Indem. Co. v. Hudson Excess Ins. Co., 786 F. Supp. 3d 821, 827-28 (S.D.N.Y. 2025).

---

subcontractor, read in tandem with its allegations about the nature of the plaintiff's injuries, obligated the subcontractor's insurance company to defend the general contractor. Emps. Ins. Co., 759 F. Supp. 3d at 351-53. Here, Natal's complaint does not refer to AMB's work in any analogous fashion. Because express allegations about the work of a subcontractor are not necessary to trigger the duty to defend, as the Court discusses below, Employers Insurance Company of Wausau is a poor analogy for this case.

American Empire raises two arguments in response to these points.
First, it argues that MDG is not, in fact, an additional insured to
which it owes a duty in reference to the Underlying Action. See ECF
No. 21 at 10-12. According to American Empire, coverage for additional
insureds under policies like the one at issue can be triggered only
where either a named insured is a "direct defendant" in an underlying
action, or the plaintiff in the underlying action is an employee of a
named insured. Because AMB falls into neither of these categories,
American Empire reasons, it does not owe MDG coverage as an additional
insured. See id. Second, American Empire contends that "no facts
developed to date" in the Underlying Action "support a finding that
AMB was truly at fault for Natal's alleged injuries." Id. at 12-14.
Both lines of argument fail.

The caselaw on which American Empire relies does not support the
proposition that the duty to defend an additional insured is limited
to the circumstances that American Empire mentions. In Travelers
Indemnity Company v. Hudson Excess Insurance Company, for instance,
this Court rejected the defendant insurance company's argument "that
it does not have a duty to defend because [the subcontractor] is not
named in the underlying complaint." 786 F. Supp. 3d at 828. The Court
reasoned that "the duty to defend derives, in the first instance, not
from the complaint drafted by a third party, but rather from the
insurer's own contract with the insured." Id. In that case, as in this
one, the allegations in the underlying action suggested that a party

not named in the underlying plaintiff's complaint was liable for her injuries. See also Indian Harbor, 165 A.D.3d at 549 (holding that insurance company had duty to defend multiple insureds in underlying action); All State Interior Demolition, Inc. v. Scottsdale Ins. Co., 168 A.D.3d 612, 612-13 (1st Dep't 2019) (rejecting insured's theory that it owed no duty to defend where complaint did not allege wrongdoing on part of named insured); City of New York, 682 F. Supp. 3d at 340-41 (holding that insurer had duty to defend additional insured where alleged wrongdoing was by additional insured's agent). None of these cases narrows the duty to defend in the respects that American Empire proposes.

Moreover, American Empire cannot escape its duty to defend because discovery in the Underlying Action has produced equivocal evidence about AMB's fault for Natal's injuries. The duty to defend applies unless "there is no possible factual or legal basis on which" American Empire "might eventually be obligated to indemnify" MDG, Travelers Indem. Co. of Conn., 2025 WL 2772941, at *8, and the evidence in the Underlying Action is not nearly so clear. As the Court noted above, MDG's construction manager testified that AMB was performing work in the Keith Plaza garage on the day of Natal's alleged injuries; he also testified that AMB completed working over the location of Natal's accident only a few days prior to its occurrence. Because inferences about AMB's liability may fairly be drawn from these and other facts and because the Underlying Action remains ongoing, the Court cannot

conclude that "there is no possible factual or legal basis" that would trigger American Empire's duty to indemnify MDG. See id.

V.    Conclusion

For the foregoing reasons, the Court grants USSIC's motion and will, at the conclusion of this case, enter judgment in USSIC's favor on Counts One, Two, and Four.

In the meantime, the parties are hereby directed to place a joint telephone call to Chambers no later than November 17, 2025, to discuss the scheduling of the remainder of this action.

The Clerk of Court is respectfully directed to terminate the motion at docket number 14.

SO ORDERED.

New York, New York
November 12, 2025

JED S. RAKOFF, U.S.D.J.